ALFRED OSBORN

*v.*

JOHN V. FARWELL.

1. LEASE—*construed as to payment for abridgement of term.* Where a lease provided that in case the tenant was required to surrender before the expiration of his term, a proportionate allowance of rent should be made to him by the lessor for the time his occupancy should be abridged from such cause, and then, in a new sentence, provided to the same effect in case the premises should become untenantable by fire, "*such allowance*" to be paid in the lands taken by the lessee of the tenant in payment of the rent, it was *held*, that the payment in the lands applied to either contingency upon which the tenant's occupancy might be abridged.

2. CONTRACT—*punctuation as explaining.* Punctuation in written contracts may sometimes shed light upon the meaning of the parties, but is never allowed to overturn what seems the plain meaning of the whole contract.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. STEELE & JONES, for the appellant.

Messrs. HITCHCOCK & DUPEE, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Appellee, being the owner of a building in Chicago, called the "Arcade Building," let a part of the same to the United States for offices, court rooms, etc., and having permission to let the fifth floor to other tenants, subject to the control of the officers of the government as to the character of the occupants, the mode of occupancy, and subject to the right of the government to require the fifth floor to be vacated at any time.

On this condition appellee leased the fifth floor to Darling, on the 12th of August, 1873, by a lease, to run until September 20, 1876, at the rate of $2400 per annum, and accepted, in payment of the rent for the whole term, the conveyance to him by Darling of certain lands, among which were certain

lands in Dunklin county, Missouri, which were taken at the price of $5700.

The lease contained the following: "If said Darling shall be required by the United States government to leave and vacate said premises before the termination of this lease, a proportionate allowance of rent shall be made to said Darling by said Farwell for the time his occupancy of said premises shall be abridged from such cause. And in case said premises shall be destroyed by fire, so as to be rendered untenantable, a proportionate allowance of rent shall be made to said Darling by said Farwell for the time said premises shall thus remain untenantable; and such allowance may be paid by said Farwell in said lands in Dunklin county, at the same price paid by Farwell, * * * at the election of said Farwell."

Darling assigned this lease to Osborn, the appellant, who occupied this fifth floor until some time in July, 1874, when, upon the demand of the United States government, he was required to leave and vacate the premises. Having done so, he became, under the lease and assignment, entitled to a "proportionate allowance of the rent for the time his occupancy of the premises" was abridged.

The only question submitted to this court relates to the kind of payment Farwell is bound to make. He insists that he has a right to make payment in the lands in Dunklin county, Missouri, while appellant demands payment in cash. The case must turn upon the construction of the words of the lease above quoted.

Appellant insists, because the description of the first contingency, upon which a proportionate allowance of rent was to be made, closes with a period, and the description of the second contingency begins with a capital letter, and is found in a second and separate sentence and in the same sentence in which the provision for payment in land is found, that the provision for payment in land applies only to the second contingency. In other words, if "his occupancy" had been "abridged" by the destruction of the premises by fire, Far-

well would have had the right to make compensation in land, but having been abridged by the intervention of the United States, he is bound to make compensation in money.

This position can not be sustained. Punctuation in written contracts may sometimes shed light upon the meaning of the parties, but it must never be allowed to overturn what seems the plain meaning of the whole contract. It seems plain to us, that when the parties say, "such allowance may be paid * * * in land," they meant such allowance, from whichever cause arising, may be so paid. The very phrase, "a proportionate amount of rent shall be made," suggests the idea that the amount, when ascertained, is to be adjusted in some manner other than by full payment in cash. In our view, the words of this lease, notwithstanding the period, indicate that two contingencies are described, and upon the happening of either a proportionate allowance of rent was to be made to the tenant; and such allowance, whether growing out of the first or second contingency, was to be paid by Farwell, at his election, in land, as provided in the lease.

We hold that the circuit court gave the true construction to this clause of the lease, and the judgment will be affirmed.

*Judgment affirmed.*